**Darrell Wayne REED, Plaintiff,**

**v.**

**COUNTY OF ALLEGAN; Greg Berens and Robert Kernick, Individually, and as Deputies of the Allegan County Sheriff's Department; Fred Platteborze and Robert Sutka, Sergeants of the Allegan County Sheriff's Department, Defendants.**

**No. G88–177 CA6.**

United States District Court, W.D. Michigan, S.D.

July 21, 1988.

Sprik & Andersen, P.C. by Dale R. Sprik, Grand Rapids, Mich., for plaintiff.

Cummings, McClorey, Davis & Acho by Michael Rosati and James L. Dyer, Livonia, Mich., for defendants.

## OPINION

ENSLEN, District Judge.

This matter is before the Court on a motion for summary judgment filed by defendants County of Allegan, Greg Berens, Robert Kernick, Fred Platteborze and Robert Sutka. For the reasons stated below, the Court will deny the motion in part and grant it in part.

## Facts

The facts alleged in plaintiff's complaint are as follows. On May 26, 1987, the plaintiff, Darrell Reed was driving his automobile in Fennville, Michigan. Defendant Berens, an Allegan County Sheriff's Deputy, began to follow plaintiff. Instead of pulling to the side of the road, the plaintiff attempted to outrun the defendant. Plaintiff and defendant then engaged in a high-speed chase through the town of Fennville and surrounding environs, which ended when plaintiff crashed his automobile in an attempt to avoid hitting a roadblock placed in his path by defendant Kernick. Kernick is also employed as an Allegan County Sheriff's Deputy. The complaint alleges that Berens radioed his colleague Kernick for assistance, requesting that the latter defendant establish the roadblock. Plaintiff also asserts that defendants Platteborze and Sutka, the deputies' supervisors, approved of this request. In any event, Kernick established a roadblock by parking his police cruiser laterally across the two-lane highway upon which plaintiff was traveling. The complaint alleges that the roadblock was unlit and therefore concealed from plaintiff, and that Kernick illuminated the cruiser's overhead lights only after plaintiff was too near the roadblock to avoid a collision of some sort. The complaint further alleges that, upon seeing the roadblock, the plaintiff swerved his car to the left, in an effort to avoid hitting the police cruiser. This caused plaintiff to hit a tree, and violently roll his car. Plaintiff suffered quadriplegia as a result of this collision.

Plaintiff's complaint alleges numerous causes of action under both federal and state law. His federal claims, based upon 42 U.S.C. § 1983, allege deprivations of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution. Defendants argue that plaintiff's complaint fails to state a cause of action under either theory because the high-speed chase and roadblock did not constitute a "seizure" within the meaning of the Fourth Amendment and because the use of the roadblock did not deprive plain-

tiff of a liberty interest without due process of law.[1] While the Court agrees that the plaintiff's claim under the Fourth Amendment must be dismissed, I find that plaintiff's complaint does state a claim for relief under the Fourteenth Amendment.

### Standard

■ Although defendants label their motion as one for summary judgment, their only arguments are that the complaint fails to state a claim upon which relief could be granted. They submit no affidavits or other exhibits in support of the motion, and state that they rely upon Federal Rule of Civil Procedure 12(b)(6). Therefore, the Court will treat this motion as a motion to dismiss pursuant to that rule. A motion to dismiss tests the legal sufficiency of the complaint—whether it has adequately stated a claim for relief. In deciding such a motion, the Court must accept as true all factual allegations in the complaint. *Jones v. Sherrill*, 827 F.2d 1102, 1103 (6th Cir. 1987); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983); *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Jones*, 827 F.2d at 1103.

In order to state a claim for relief under 42 U.S.C. § 1983, the plaintiff must demonstrate that: (1) the defendants acted under color of state law; and (2) their conduct caused a deprivation of constitutional rights. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Jones*, 827 F.2d at 1104; *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir.1987) (*citing, Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)). Plaintiff's

complaint alleges violation of his rights under the Fourth and Fourteenth Amendments. In order to establish his Fourth Amendment claim, the plaintiff must show that his injuries were proximately caused by the defendants' conduct in subjecting him to an unreasonable seizure within the meaning of that amendment. *Cameron v. City of Pontiac, Michigan,* 813 F.2d 782 (6th Cir.1987); *Galas v. McKee,* 801 F.2d 200, 202 (6th Cir.1986). In order to establish a violation of his Fourteenth Amendment rights, the plaintiff must establish that the defendants' conduct deprived him of a constitutionally protected interest, here the right to liberty, without due process of law. *Nishiyama,* 814 F.2d at 279. The Court will first address plaintiff's Fourth Amendment claim.

### Discussion

In *Galas v. McKee,* 801 F.2d 200 (6th Cir.1986), a case relied upon by both parties, the Sixth Circuit considered a similar Fourth Amendment issue.[2] In that case, the plaintiff, a 13–year–old boy, refused to stop the automobile he was driving when directed to do so by a police officer. A high-speed chase insued, reaching speeds of 100 miles per hour. The chase ended when plaintiff lost control of his automobile and ran off the roadway. The plaintiff argued that the officer's conduct in carrying on a high-speed chase to apprehend a traffic violator deprived him of his right to be free of unreasonable seizures under the Fourth Amendment. The Sixth Circuit disagreed.

Applying *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968), the court held that a seizure occurs only when "the officer, by means of physical force or other show of authority, has in some way restrained the liberty of a citizen...." *Galas,* 801 F.2d at 203. Although the police officer's conduct in turn-

---

1. The Court notes that, while all defendants join in this motion, the only arguments advanced relate to the conduct of defendants Berens and Kernick. No issue of qualified immunity, pattern and practice or supervisory liability is raised in defendants' motion. Therefore, the Court's opinion will not discuss those issues.

2. *Galas* also addressed, and rejected, a claim under the Fourteenth Amendment. The Court will discuss that portion of *Galas* in a later section of this opinion.

ing on his blue lights and siren were arguably a "show of authority," the court concluded that no seizure had taken place, since the show of authority did not in fact restrain the plaintiff's freedom of movement. The court reasoned as follows:

> ... [T]he reasonableness of a seizure or method of seizure cannot be challenged under the Fourth Amendment unless there was a completed seizure (that is, a restraint on the individual's freedom to leave), accomplished by means of physical force or show of authority. During the initial stages of the pursuit at issue here, plaintiff was not restrained at all. Rather than submitting to the show of authority, plaintiff chose to flee. During the latter stages—when plaintiff crashed —he was tragically not free to walk away. This restraint on plaintiff's freedom to leave, however, was not accomplished by the show of authority but occurred as a result of plaintiff's decision to disregard it.

*Id.* at 203.

Although its holding that no seizure occurred made a discussion of the reasonableness of the officer's conduct unnecessary, the court went on to conclude that the use of high-speed chases to apprehend traffic violators was not an unreasonable method of seizure under the Fourth Amendment:

> [T]he minimal intrusion on a traffic offender's Fourth Amendment right occasioned by the officer's participation in a high-speed pursuit does not outweigh a longstanding police practice which we consider 'essential to a coherent scheme of police powers.' ... [T]he use of high-speed pursuits ... is not unreasonable and, thus, not violative of the Fourth Amendment.

*Id.* at 204.

*Brower v. Inyo County,* 817 F.2d 540 (9th Cir.1987) applied *Galas* in a case involving both a high-speed chase and a roadblock, concluding that the police conduct at issue did not constitute a "seizure" for Fourth Amendment purposes. In *Brower,* a lengthy high-speed chase terminated when the plaintiff's car collided with a tractor-trailer parked laterally across a two lane highway, blocking both lanes of traffic. The roadblock was concealed from plaintiff's view because it was parked behind a curve. In addition, the officer whose car was parked 200 feet ahead of the roadblock did not illuminate the roadblock until plaintiff approached, when the officer turned on his overhead lights, effectively blinding the plaintiff. In holding that no seizure occurred since the plaintiff's freedom of movement was not restrained, the Ninth Circuit noted:

> In this case, as the twenty-mile chase makes plain, [the plaintiff] consciously chose to avoid official restraint. That decision, an exercise of autonomy, cannot fairly be viewed as a "seizure" by the police, under the fourth amendment. [The plaintiff's] seizure, if any, was the result of his own effort in avoiding numerous opportunities to stop.... We see no need to stretch the fourth amendment seizure to provide another theory for a tort claim which involves the combined intentional conduct of both victim and defendants. That conduct can be fully evaluated under ordinary tort principles without any need to reach out for a bizarre definition of "seizure." Accordingly, we hold that no fourth amendment "seizure" occurred.

*Id.* at 546–47.[3]

■ The Court believes that the reasoning adopted in *Galas* and *Brower* requires that plaintiff's Fourth Amendment claim be dismissed. Although defendant Berens' conduct in signalling for the plaintiff to stop was a show of authority, that show of authority did not effect a seizure for Fourth Amendment purposes because it did not restrain the plaintiff's freedom of movement. As the court concluded in *Brower,* the plaintiff's conduct in choosing

**3.** *Brower* distinguished a line of cases finding Fourth Amendment seizures in the context of roadblocks or high-speed chases on the ground that these cases involved claims by parties for whom the roadblock was not intended or roadblocks created for reasons other than to stop a fleeing suspect. *See, e.g., Jamieson v. Shaw,* 772 F.2d 1205 (5th Cir.1985). The Court believes that the same distinction applies, with equal force, to this plaintiff's claim.

to ignore Berens' request for him to stop, and in choosing to continue a high-speed chase, simply does not constitute a seizure. Nor did the roadblock constitute a seizure because, although it arguably restrained the plaintiff's movement, that restraint was the result of plaintiff's own decision to avoid numerous opportunities to stop voluntarily. Since no seizure occurred, the plaintiff's complaint fails to state a claim for violation of his Fourth Amendment rights.

Plaintiff argues that this case may be distinguished from *Brower* and *Galas* on the ground that the police officers involved knew the plaintiff, and could have arrested him at a later time, in a safer manner. While their decision to continue a high-speed chase of a known individual may have been grossly negligent or reckless, subjecting them to liability under a Fourteenth Amendment analysis, it does nothing to change the result of his Fourth Amendment claim. The fact remains that plaintiff's freedom of movement was not restrained by the show of authority involved in this case. Whether the officers acted reasonably in setting up a roadblock, and in continuing to pursue the plaintiff goes to the reasonableness of their conduct, an issue the Court need not address unless it finds that a seizure in fact occurred. Since no seizure occurred, the reasonableness of the officers' conduct is not at issue on this claim.

Plaintiff also appears to argue that the officers chose to pursue plaintiff, and to set up a roadblock, because they wanted to harass the plaintiff. Plaintiff's brief in opposition to the motion to dismiss notes that the officers knew the plaintiff because he often squealed his tires while driving in Fennville.[4] Again, this contention of intentional and improper police harassment may be relevant to plaintiff's Fourteenth Amendment claim, since it would arguably establish a policy or practice of subjecting the plaintiff to unreasonable risks of harm for the purpose of intimidating him, but it

does not establish that a seizure occurred. In this instance, the police conduct did not restrain plaintiff's freedom of movement and the Fourth Amendment claim must fail for that reason.

■ Plaintiff's argument that the roadblock at issue here constitutes an unreasonable use of deadly force must fail for the same reason. *See, Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Jamieson v. Shaw,* 772 F.2d 1205 (5th Cir.1985); *Leber v. Smith,* 773 F.2d 101 (6th Cir.1985); *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.1973). The roadblock at issue here became a deadly force only because plaintiff chose to continue a high-speed chase, rather than to pull his car to the side of the road or to slow down. That voluntary choice converted an otherwise "nondeadly" force into a deadly one, since the roadblock would not have been deadly but for the speed with which plaintiff approached it.

Because I conclude that no seizure occurred for purposes of the Fourth Amendment, Counts I through IV of the plaintiff's complaint are dismissed, to the extent that they allege a deprivation of the plaintiff's rights under that amendment.

■ Plaintiff's claims under the Fourteenth Amendment, however, stand on a different footing. As the Sixth Circuit recognized in *Nishiyama v. Dickson County, Tennessee,* 814 F.2d 277, 281 (6th Cir.1987), the due process clause of the Fourteenth Amendment forbids certain types of governmental conduct in order to prevent " 'government power from being "used for purposes of oppression." ' " (*quoting, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662 at 665, 88 L.Ed.2d 662 (1986); in turn quoting, *Murray's Lessee v. Hoboken Land & Improvement Co.,* 18 How. (59 U.S.) 272, 277, 15 L.Ed. 372 (1856)). Thus, whether a plaintiff's claim alleges a depri-

---

4. "The only reason that the police started following Darrell in the first place, was because he was Darrell Reed, the local tire squealer." Plaintiff's Response to Defendant's Motion for Summary Judgment at 7. "... Darrell Reed was suspected of no felony. The 'crime' of plaintiff was being Darrell Reed, the local tire squealer." *Id.* at 12.

vation of procedural or of substantive due process rights, the " 'touchstone ... is protection of the individual against arbitrary action of government.' " *Id.* The court held in *Nishiyama* that an allegation of gross negligence on the part of government officials was sufficient to state a claim for deprivation of due process, since such an allegation charged the officials with "arbitrary use of government power." *Id.* at 282. The court further held that, "a person may be said to act in such a way as to trigger a § 1983 claim if he intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow." *Id.* The plaintiff's complaint in this case states sufficient factual allegations to provide a basis for relief on a gross negligence or recklessness theory, and therefore the motion to dismiss will be denied.

Plaintiff alleges that both officer Berens and officer Kernick created an unreasonable risk of harm to the plaintiff when they maintained a high-speed chase of his vehicle and when they set up an unmarked, arguably concealed, roadblock in his path. Especially taken together with plaintiff's claim that he was singled out for this treatment because he was known as a local "trouble maker," [5] the allegations rise above mere negligence and could support relief under section 1983. The Court agrees with plaintiff that the officers' conduct could be found to have created an unreasonable and unjustifiable risk to the plaintiff's life, thus establishing grossly negligent or reckless conduct on the part of defendants Berens and Kernick. Assuming plaintiff's allegations to be true, these defendants knew that the plaintiff was travelling at a high rate of speed. They knew he was not suspected of committing a crime. They also knew that, at his rate of speed, he would be unable to avoid a collision with the roadblock, or with some other object.[6] Considered in relation to the offense plaintiff allegedly committed—squealing tires and/or making a rolling stop—a factfinder could conclude that the use of a high-speed chase and a roadblock created an unreasonable risk of harm to plaintiff.

Thus, a fact finder could conclude that the officers here acted in a grossly negligent or reckless manner, raising the possibility that the officers' conduct deprived plaintiff of his liberty without due process of law. *Nishiyama* at 282. In *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Supreme Court held that negligent conduct by a government official does not constitute a "deprivation" within the meaning of the due process clause, primarily because negligent conduct does not involve the sort of abuse of authority that the due process clause was intended to prevent. Here, plaintiff's allegations, if established, could provide a factfinder with a basis for concluding that such abuse of power occurred in this case. Plaintiff argues that the defendants chose to pursue him toward a roadblock concealed by darkness primarily because he was identified by them as a tire squealer. No such allegation was present in *Galas*, where the Sixth Circuit rejected a similar Fourteenth Amendment claim. 801 F.2d at

---

**5.** This allegation is not clearly contained in plaintiff's complaint. The complaint does, however, allege that all defendants except Allegan County acted willfully, maliciously and wantonly toward plaintiff, causing his injuries. *See,* Complaint ¶¶ 23(a); 29(a); 37(a). It further alleges that the defendants knew plaintiff and could have arrested him at a later date. These allegations, read broadly and supported by evidence, would establish a basis upon which a factfinder could conclude that an abuse of government power occurred.

**6.** Defendants argue here that the roadblock did not cause plaintiff's injuries because he successfully avoided colliding with it. Assuming plain-

tiff's allegations to be true, the defendants set up this roadblock so that plaintiff, approaching at a high rate of speed, had two choices—hit the roadblock, or swerve and hit something else. Whichever option plaintiff chose, he was threatened with severe injury, if not death. Presumably, without the intervention of the roadblock, plaintiff would have been able to avoid any collision. An argument that this roadblock did not create a risk of harm or cause plaintiff's injuries may prevail at trial, but it cannot prevail on a motion to dismiss because it requires the Court to draw conclusions of fact on disputed issues.

2–4–205.[7]  Moreover, in *Brower*, the court considered and accepted a due process claim based upon similar facts:

> The use of roadblocks ... per se is not a violation [of the due process clause], but the pattern and practice of using a roadblock designed as a deathtrap, if established by proof, could be a violation of due process....
>
> ... [T]he elements of concealment and intentional blinding of the driver ... state a claim for violation of [plaintiff's] due process rights.

*Brower*, 817 F.2d at 545.  Here, plaintiff argues that the roadblock was concealed by darkness and that officer Kernick turned on his overhead lights in such a manner as to blind plaintiff.[8]  These allegations, if established, would provide a basis for relief.  Thus, the motion to dismiss will be denied.

### Conclusion

The plaintiff's claim under the Fourth Amendment must be dismissed because the complaint does not sufficiently allege that a "seizure" occurred.  However, plaintiff's complaint sufficiently states a claim under the Fourteenth Amendment, since it alleges that the defendants deprived plaintiff of his liberty through grossly negligent or reckless conduct.  Because I believe that, if supported by evidence, the allegations in the complaint could provide a basis for relief on this theory, the motion to dismiss will be denied for those claims.

### ORDER

In accordance with the written opinion dated July 21, 1988;

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED that those portions of Counts I, II, III and IV which allege a deprivation of the plaintiff's rights under the Fourth Amendment are DISMISSED with prejudice.

---

**7.**  In fact *Galas'* Fourteenth Amendment analysis concerned an argument that the municipal defendant's policy allowing police officers to follow traffic offenders infringed on the plaintiff's fundamental right of life because it allowed the use of deadly force in the apprehension of traffic violators.  No such claim is advanced here, and thus the Court concludes that *Galas* does not mandate dismissal of the plaintiff's Fourteenth Amendment claim.  Here plaintiff argues that the officers acted with reckless disregard for his safety for the sole purpose of impressing their authority on a well known "troublemaker."  That is exactly the sort of abuse of police power, not present in *Galas*, which the due process clause was designed to avoid.

**8.**  Defendants attempt to distinguish *Brower* on the ground that the roadblock in that case blocked the entire roadway, while the roadway here only partially obstructed the roadway.  This is a distinction without a difference.  *See, supra* note 6.