2002 SD 69

Nicholas W. HANCOCK, Plaintiff
and Appellant,

v.

WESTERN SOUTH DAKOTA JUVE-
NILE SERVICES CENTER, Carla
Leveque, Defendants and Appellees,

and

DeAnn Myers, Lori Lindblom
and Jackson Nursing,
Inc., Defendants.

No. 22183.

Supreme Court of South Dakota.

Considered on Briefs April 23, 2002.

Decided June 12, 2002.

Steven M. Christensen of Christiansen & Frederickson, Deadwood, for appellant.

James S. Nelson, Donald P. Knudsen of Gunderson, Palmer, Goodsell & Nelson, Rapid City, for appellees.

MILLER, Retired Justice, Acting By Appointment.

[¶ 1.] In this appeal we affirm the circuit court and hold that the "open courts" provision of the state constitution does not abolish sovereign immunity. Specifically, we hold that there is no constitutional violation by the statutes which, among other things, provide immunity for failure to provide sufficient personnel, programs, services and the like in a prison or correctional facility.

## FACTS AND PROCEDURE

[¶ 2.] Nicholas Hancock, then age 17, was detained at the Western South Dakota Juvenile Services Center (Center) for stealing some music CDs from a car in Spearfish, South Dakota. He was taken into custody on March 20, 2000, and arrived at Center on March 22 in good health.

[¶ 3.] Center, which is owned and operated by Pennington County, did not provide its own nursing staff. Rather, it contracted with Jackson Nursing, Inc., to provide nursing services for those detained at the facility.

[¶ 4.] The day after his arrival, Hancock became sick to his stomach and began vomiting. Nurse DeAnn Myers, an employee of Jackson Nursing, looked in on Hancock at 11:30 a.m., noted that he was vomiting, but did not check his vital signs. On March 24, Nurse Lori Lindblom, another employee of Jackson Nursing, looked in to confirm that Hancock was still vomiting, but she did not check his vital signs, examine him or evaluate him. Hancock was not seen by a nurse on March 25 and was denied permission to go to the hospital.

[¶ 5.] At approximately 10:30 p.m. on March 25, Hancock was evaluated by a Center employee, who was also an emergency medical technician. Upon taking his vital signs, she immediately called Sherry Jackson, owner of Jackson Nursing, Inc., at home. Jackson directed that Hancock be taken to the Rapid City Regional Hospital emergency room. It was learned that his appendix had ruptured before his arrival. He immediately underwent surgery and remained in the hospital for seven days. He was discharged on April 1, but returned 13 days later when he again became very ill. Additional surgery was necessary to clean out the abscesses that

had developed from the ruptured appendix.

[¶ 6.] The doctor informed Hancock and his mother that the second surgery was necessary to clean out the extensive infections that had developed from the appendix having ruptured before Hancock was taken to see a doctor. Two physicians testified by deposition that Hancock did not receive reasonable or adequate medical attention. Carla Leveque, Center's administrator, acknowledged in her deposition testimony that the nurses had failed to follow Center's established medical protocol.

[¶ 7.] Hancock sued Center, administrator Leveque, Jackson Nursing, Inc., and the individual nurses. He alleged, among other things, that the nurses negligently failed to follow Center's medical protocol, which resulted in the two separate surgeries to correct the problem.

[¶ 8.] The trial court granted Defendants' motion for summary judgment based on the statutory immunity provided in SDCL 3–21–8 and 3–21–9(5). Hancock appealed, raising the following issues:

1. Whether SDCL 3–21–8 and 3–21–9 unconstitutionally deny Hancock a remedy in violation of South Dakota's "open courts" provision.

2. Whether SDCL 3–21–8 and 3–21–9 deny Hancock equal protection of the law under the United States and South Dakota Constitutions.

Of particular significance to our consideration herein, during the pendency of the appeal, the parties changed. Approximately six weeks after Appellant's Brief

was filed, the parties agreed that Jackson Nursing, Inc., and the individual nurses would be released from the appeal. The Court approved that release by order dated February 14, 2002. Therefore, Hancock's appeal necessarily relates only to issues concerning Center and Leveque.[1]

## STANDARD OF REVIEW

[¶ 9.] Hancock argues that SDCL 3–21–8 and 3–21–9 are unconstitutional in that they deprive him access to the courts and equal protection of the law. We review constitutional questions *de novo*. *Vilhauer v. Horsemens' Sports, Inc.*, 1999 SD 93, ¶ 7, 598 N.W.2d 525, 527 (citations omitted).

## ANALYSIS AND DECISION

[¶ 10.] **1. Whether SDCL 3–21–8 and 3–21–9 unconstitutionally deny Hancock a remedy in violation of South Dakota's "open courts" provision.**

[¶ 11.] "There is a strong presumption that the laws enacted by the [L]egislature are constitutional and the presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a provision of the constitution." *Vilhauer*, 1999 SD 93 at ¶ 16, 598 N.W.2d at 528 (citations omitted). Because the party challenging the constitutionality of a statute bears the burden of proof, Hancock must demonstrate, beyond a reasonable doubt, that SDCL 3–21–8 and 3–21–9[2] violate a state or federal constitutional provision. *Id.*

---

1. Interestingly, Appellant did not amend its brief or file a reply brief. The foregoing procedural history was garnered though this Court's review of the record.

2. SDCL 3–21–8 provides:
   No person, political subdivision or the state is liable for failure to provide a prison, jail

or penal or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, programs, facilities or services in a prison or other correctional facility.
SDCL 3–21–9 provides:

[¶ 12.] Article VI § 20 of the South Dakota Constitution provides: "All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay." This Court has repeatedly construed this "open courts" provision to:

> [A]llow unhindered access to the courthouse by a person who had a valid cause of action based on existing statute or the common law, timely and properly brought, who then would be allowed to present their case to a human fact finder. In other words under those conditions, a litigant was guaranteed its day in court.

*Wegleitner v. Sattler*, 1998 SD 88, ¶ 33, 582 N.W.2d 688, 698. *See also Cromwell v. Rapid City Police Dep't*, 2001 SD 100, ¶ 29, 632 N.W.2d 20, 27 (holding open courts provision precluded reassertion of sovereign immunity); *Vilhauer*, 1999 SD 93 at ¶ 17, 598 N.W.2d at 529 (holding statute does not provide complete immunity and therefore, does not violate "open courts" provision); *Green v. Siegel, Barnett, & Schutz*, 1996 SD 146, ¶ 26, 557 N.W.2d 396, 403 (holding statutes of limitations do not violate "open courts" provision); *Kyllo v. Panzer*, 535 N.W.2d 896, 903 (S.D.1995) (holding statutes unconstitutional as they place absolute ban on recovery).

[¶ 13.] While a litigant is guaranteed his day in court, such is only the case for legally cognizable causes of action. *Green*, 1996 SD 146 at ¶ 26, 557 N.W.2d at 403. Article VI § 3 forbids exclusion from the courtroom on the basis of financial status, sex, race, color, or national origin. *Vilhauer*, 1999 SD 93 at ¶ 26, 598 N.W.2d at 532 (citations omitted). There is, however, "no basis for a claim that Art[icle] VI, § 20 could by itself become a sword to create a cause of action or become a shield to prohibit statutorily recognized barriers to recovery...." *Wegleitner*, 1998 SD 88 at ¶ 33, 582 N.W.2d at 698.

[¶ 14.] Lest it be unclear from our earlier decisions, we now specifically hold that the "open courts" provision of our constitution is in no manner an abolition of the settled principle of sovereign immunity. Thus, Hancock cannot use the "open courts" provision to override an otherwise valid act of the Legislature.

[¶ 15.] "The [L]egislature has the power to define the circumstances under which a remedy is legally cognizable and those under which it is not." *Green*, 1996 SD 146 at ¶ 26, 557 N.W.2d at 403 (citation omitted). The statutory immunity provided in SDCL Chapter 3–21 (and specifically sections 3–21–8 and 9) is essential to protect the public decision-making process. "Immunity is critical to the state's evident public policy of allowing those in charge of jails to make discretionary decisions about prison administration without fear of tort liability." *Webb v. Lawrence County*, 144 F.3d 1131, 1140 (8th Cir.1998). *See also Martinez v. California*, 444 U.S. 277, 283 n6, 100 S.Ct. 553, 558, 62 L.Ed.2d 481, 487 (1980) (noting Legislature has broad powers to control government tort liability as it is essential to prevent a chilling effect on the decision-

No person, political subdivision or the state is liable for any injury resulting from the parole or release of a prisoner or from the terms and conditions of his parole or release or from the revocation of his parole or release, or for any injury caused by or resulting from:

(1) an escaping or escaped prisoner;
(2) an escaping or escaped person;
(3) a person resisting arrest;
(4) a prisoner to any other prisoner; or
(5) services or programs administered by or on behalf of the prison, jail or correctional facility.

making process in correctional facilities); *B.W. v. Meade County,* 534 N.W.2d 595, 597 (S.D.1995) (noting immunity is critical to protect the system of reporting and investigating child abuse without fear of reprisal). The open courts provision "does not prevent the [L]egislature from changing the law which creates a right. Rather this section simply provides that if a right accrues under the law, the courts will be available to effectuate such right." *Wegleitner,* 1998 SD 88 at ¶ 32, 582 N.W.2d at 698 (citation omitted).

[¶ 16.] We also note that SDCL 3–21–8 and 3–21–9 do not appear to provide an absolute bar to recovery. As the 8th Circuit recognized in *Webb,* an alternate remedy existed in filing a 42 USC § 1983 civil rights action. 144 F.3d at 1141. In fact, Hancock moved to amend his complaint to include a § 1983 claim, but then later withdrew his motion for reasons not evident in the record. Simply because the § 1983 action imposes a higher burden of proof,[3] does not mean the action is not a viable remedy for the purposes of an "open courts" analysis. This Court has consistently upheld such restrictions. *See Vilhauer,* 1999 SD 93 at ¶ 22, 598 N.W.2d at 530 (citations omitted).

[¶ 17.] Hancock further argues that the discretionary/ministerial distinction applied by this Court in *Kyllo* also applies here. 535 N.W.2d at 901–02. He asserts that the nurses were performing merely ministerial duties by following the prescribed course of conduct in Center's medical protocol. He maintains that, in failing to follow that protocol, the nurses were not only negligent, they were unprotected by the immunity provided in SDCL 3–21–8 and 3–21–9. However, in light of the procedural posture of this case, this argument is inappropriate.

[¶ 18.] The discretionary/ministerial distinction was intended to hold an *individual* tortfeasor responsible for his or her own negligence without compromising the sovereignty of the state. *Id.* "State employees are cloaked in sovereign immunity when performing discretionary acts because 'such discretionary acts participate in the state's sovereign policy-making power.'" *Id.* at 902 (quoting *Ritter v. Johnson,* 465 N.W.2d 196, 198 (S.D.1991)). Conversely, "a state employee who 'fails to perform a merely ministerial duty, is liable for the proximate results of his failure to any person to whom he owes performance of such a duty.'" *Id.* (quoting *Nat'l Bank of S.D. v. Leir,* 325 N.W.2d 845, 848 (S.D. 1982)) (additional citations omitted). Thus, this distinction is only appropriate in arguing that an individual actor is liable, despite his or her status as a government employee.

[¶ 19.] Here, the individual nurses and Jackson Nursing, Inc., are private health care providers that contract with the county to provide services at a publicly owned detention facility. Given the procedural posture of this case, we need not decide whether they are to be considered state/public employees for the purpose of immunity under SDCL 3–21–8 and 3–21–9. Neither are we required to determine whether treating Hancock, in light of Center's medical protocol, was a ministerial duty. The issue of whether the nurses negligently failed to perform their duties, ministerial or otherwise, is not properly before us as they are no longer party to this action. Hancock does not argue that Leveque (the only other individual involved in this appeal) negligently failed to follow the medical protocol. It would ap-

---

**3.** Under 42 USC § 1983, Hancock would be required to prove that Defendants were delib-

erately indifferent to his welfare.

pear that she is being sued in her capacity as administrator of Center in failing to properly supervise the nurses. Improper treatment of Hancock in non-compliance with Center's medical protocol is the basis of Hancock's discretionary/ministerial argument. Negligent supervision is not. Therefore, the distinction in *Kyllo* is not applicable to this appeal.

[¶ 20.] **2. Whether SDCL 3-21-8 and 3-21-9 deny Hancock equal protection of the law under the United States and South Dakota Constitutions.**

[¶ 21.] Hancock claims that SDCL 3-21-8 and 3-21-9 deprive detainees of equal protection of the laws because the statutes preclude them from suing private medical providers for negligence or malpractice.[4] He alleges that the statutes "create a class of persons [which is] not entitled to receive health care [that] meets a standard of reasonable and ordinary care." Because Jackson Nursing, Inc., and the individual nurses are no longer part of this action, we find this issue moot.

[¶ 22.] Affirmed.

[¶ 23.] GILBERTSON, Chief Justice, and AMUNDSON, KONENKAMP, and ZINTER, Justices, concur.

[¶ 24.] MILLER, Retired Justice, Acting by Appointment, sitting for SABERS, Justice, disqualified.

---

4. Hancock's equal protection argument is inappropriately directed at the application of these statutes to preclude law suits against the nursing defendants. First, Hancock states that the statutes, "if construed to grant absolute immunity to **private** health care providers who contract to provide services to detention facilities, violate the right of individuals in jails or detention facilities to equal protection of the laws." (emphasis in original). This implies that if immunity were *not* extended to the private providers, Hancock would have no equal protection claim. Hancock goes on to note "Any other citizen of the state has a right to bring a claim for injuries as a result of medical negligence or malpractice." They do not, however, have a right to bring a claim against the State, only against private medical providers. In challenging the trial court's reliance on *Martinez*, Hancock states, "the relationship between [his] injuries and the negligence of Jackson Nursing and its employees is ... a far cry from the attenuated nexus between a parole board's decision to release an inmate and a subsequent criminal act by that inmate...." *See Martinez,* 444 U.S. at 282-83, 100 S.Ct. at 557-58, 62 L.Ed.2d at 487-88. Hancock also raises the discretionary/ministerial distinction again in relation to "[t]he errors and omissions of the Jackson nursing employees." Finally, Hancock points out "the obvious fact *Martinez* involved government officials[,] while this case involves the private sector acting as contractors[,] presents a significant distinction." Nowhere does Hancock argue that the application of these statutes with respect to Center and Leveque would violate Hancock's equal protection rights. Thus, it is clear that this argument was meant only to challenge the application of the statutes to preclude a lawsuit against Jackson Nursing, Inc., and its employees.